## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **BIG DIPPER, INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Judge Blanche M. Manning** |
| | ) | |
| | ) | **Case No. 05 C 5395** |
| **v.** | ) | |
| | ) | |
| **WELLS' DAIRY, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

Plaintiff/Counterdefendant Big Dipper, Inc. moves to strike Defendant/Counterplaintiff Wells' Dairy, Inc.'s ("Wells") counterclaim. Wells seeks Rule 11 sanctions against Big Dipper for filing the motion to strike. Along with its motion for sanctions, Wells has filed a supporting affidavit from its counsel, which affidavit Big Dipper has moved to strike. For the reasons stated below, the motion to strike the counterclaim is denied and the motion for sanctions is denied. Further, Big Dipper's motion to strike the affidavit is also denied.

## I. Background

Big Dipper filed the instant action alleging that Wells has infringed its trademark (United States Trademark Registration No. 2,209,362). Wells, on the other hand, contends that the trademark is invalid and unenforceable. Wells has alleged counterclaims that Big Dipper has abandoned its trademark and that Big Dipper filed a fraudulent Declaration of Excusable Non-Use with the United States Patent and Trademark Office ("PTO") to maintain the registration.

Wells has made similar contentions in a petition to cancel the '362 trademark in an action before the Trademark Trial and Appeal Board ("TTAB"), which it filed in 2003. Before the PTO, Big Dipper submitted Declarations of Excusable Non-Use regarding the trademark at issue. The PTO accepted these declarations and extended the registration of the trademark for another ten years. According to Wells, it filed a letter of protest with the PTO challenging the acceptance of Big Dipper's supplemental Declaration of Excusable non-use, but the PTO never ruled on the letter. According to an affidavit filed by Wells' counsel, the PTO told her that the rules do not allow for a letter of protest to be filed against an existing registration. Wells counsel's affidavit goes on to state that the PTO told her that the only options she had were to either seek cancellation before the TTAB or seek cancellation in federal court. As such, Wells states that it is pursuing its attempts to have the trademark registration cancelled both before the TTAB as well as in this court.

Big Dipper filed a motion to strike the counterclaim pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Big Dipper's motion to strike contains two different bases for dismissal. First, its opening motion relies on a res judicata-claim preclusion argument while its reply argues that Wells failed to exhaust its administrative remedies before the PTO and therefore, Wells cannot seek relief in this court. Although Big Dipper initially raised the failure to exhaust theory in its reply brief, Wells was able to respond to it due to the way briefing occurred. Specifically, Big Dipper filed its motion to strike the counterclaim. Wells then filed its motion for sanctions, and Big Dipper subsequently filed a reply in support of its motion to strike/response to the motion for sanctions. Finally, Wells filed a reply in support of its motion for sanctions which addressed the substantive issues raised by Big Dipper in its reply in support of its motion to strike. Wells did

not file a separate response to the motion to strike the counterclaim, which is important for reasons discussed later in the section regarding sanctions.

In its motion for Rule 11 sanctions associated with the motion to strike the counterclaim, Wells contends that when Big Dipper sent Wells a copy of the motion to strike prior to filing it, Wells notified Big Dipper that the motion to strike was not warranted under existing law and that it should reconsider filing it. Nevertheless, Big Dipper filed the motion to strike on June 26, 2006, and Wells now seeks Rule 11 sanctions.

## II.      Analysis

### A.      Motion to Strike Counterclaim

As noted above, the bases upon which Big Dipper moves to strike the counterclaim changes midstream. Big Dipper's opening motion is quite brief and appears to assert a res judicata–claim preclusion theory. Specifically, Big Dipper asserts that Wells is "bound" by the decision of the PTO to extend Big Dipper's trademark registration. However, in its reply in support of the motion to strike, Big Dipper characterizes its argument as a failure to exhaust administrative remedies. Specifically, Big Dipper appears to take issue with the fact that Wells has filed a cancellation proceeding with the TTAB as well as a counterclaim seeking cancellation in the instant action. *See* Response to Motion for Sanctions and Reply in Support of Motion to Dismiss at 5 ("If this Court allows Wells Dairy to proceed with the identical claim in this proceeding and before the TTAB, there is a possibility of inconsistent results," and stating that given the district court has power concurrent with the TTAB, "if Big Dipper's trademark is canceled in one forum and not the other, what would that mean? Would the trademark be canceled?").

The court will address each of the articulated bases for dismissal.

*Res Judicata*

As to Big Dipper's initial contention that Wells is "bound" by the decision of the PTO to extend Big Dipper's registration, Big Dipper has offered no support for this argument. Indeed, as noted above, Big Dipper essentially abandoned this claim in its reply brief. As stated by Wells (and not contradicted by Big Dipper), the proceeding before the PTO regarding the extension of Big Dipper's federal registration was ex parte and does not bind subsequent determinations by a court. *See* McCarthy, 5 McCarthy on Trademarks, § 32:95 at 32-157, 32-158, and cases cited therein ("[T]he courts do not recognize ex parte decisions of trademark Examiners in the Patent and Trademark Office (PTO)," though they are entitled to consideration and "[a]n ex parte determination of an Examiner does not even preclude subsequent challenge before the Trademark Board by an opposer or petitioner for cancellation."). Indeed, as noted by McCarthy, "[e]x parte determinations of the Patent and Trademark Office, even if appealed to the Federal Circuit, cannot, under the rules of collateral estoppel, preclude those *not* a party to such determinations from collaterally challenging the result in subsequent litigation." *Id*. at 32-159 (emphasis in original).

Accordingly, to the extent that Big Dipper attempts to rely on a res judicata theory, the motion to strike is denied.

*Failure to Exhaust*

In its reply brief, Big Dipper argues that the court should strike Wells's counterclaim because it failed to exhaust its administrative remedies. Big Dipper cites to *Universal Sewing Machine Co. v. Standard Sewing Equip. Corp*., 185 F. Supp. 257 (S.D.N.Y. 1960), in support of

this argument.  In that case, the plaintiff brought a declaratory judgment action seeking

cancellation of the defendant's registered mark, among other things.  The court held that:

> one seeking cancellation offensively and relying solely upon that claim for federal jurisdiction would seem to be relegated to first exhausting his administrative remedies before resorting to the courts. *Such a situation, exemplified by the instant action, must be distinguished from the cases where there is present some independent basis of federal jurisdiction, and wherein the validity of a registered trademark is brought into issue, for example, by way of defense or counterclaim.*

*Universal Sewing*, 185 F. Supp. at 259 (emphasis added).  Thus, the *Universal Sewing*

court specifically excepted the instant situation (i.e., some independent basis for jurisdiction

exists--here, an infringement action–and the validity of the trademark is brought into question by

way of counterclaim) from the rule that exhaustion may be required prior to bringing a

declaratory judgment offensively for cancellation.  *See* J. Thomas McCarthy, 5 McCarthy on

Trademarks, § 32:54 (4th ed. 2006) ("[A] court can hear cancellation claims only if joined with

some other independent grounds for declaratory judgment.  But if the only claim for declaratory

judgment is one that could be heard by the administrative tribunals of the Patent and Trademark

Office, the court should defer to the administrative process, as the U.S. Supreme Court has

required.") (footnote omitted).

Moreover, the plaintiff's general invocation of primary jurisdiction is inapposite here.

*United States v. Philadelphia Nat. Bank*, 374 U.S. 321, 353 (1963) (primary jurisdiction

"requires judicial abstention in cases where protection of the integrity of a regulatory scheme

dictates preliminary resort to the agency which administers the scheme . . . .").  Courts have

found that if other relevant claims over which the court has jurisdiction are pending, it should not

dismiss the claims based solely on registration issues (e.g., cancellation).  *See, e.g., T.N.

Dickinson Co. v. LL Corp.*, 227 U.S.P.Q. 145, 1985 WL 14175, at *2 (D. Conn. 1985) (noting

that "[q]uestions of actual controversy and primary administrative jurisdiction should be governed by practical concerns; where further litigation can be expected no matter what the outcome at the agency level, courts should not necessarily defer to the agency" and since "plaintiff has stated antitrust and unfair competition claims with issues which overlap questions raised by this declaratory judgment action [cancellation claim,]" "the most efficient course is to retain jurisdiction over the entire complaint."). *See also PHC, Inc. v. Pioneer Healthcare, Inc.*, 75 F.3d 75, 81 (1st Cir. 1996) ("If no infringement claim were made in the district court but only a claim that a federal registration was or was not valid, a good argument might exist (absent unusual facts) for awaiting the completion of any pending Board proceeding addressed to the mark's validity. But where an infringement claim is also present and is going to be considered promptly by the court, it normally makes sense for the court to resolve a companion validity claim at the same time, *if* the issues underlying the two claims overlap to an extent that makes this course sensible.") (emphasis in original); *Continental Connector Corp. v. Continental Specialties Corp.*, 413 F. Supp. 1347, 1350 (D. Conn. 1976) ("Interests of judicial economy are best served by eschewing the primary jurisdiction objection in cases, such as this one, where facts concerning the disputed registration are going to be litigated in connection with other claims properly within this Court's jurisdiction.").

Further, as Wells points out, Big Dipper, one month after filing the motion to strike in the instant case, filed a motion to stay the cancellation proceedings before the TTAB. In that motion, Big Dipper expressly acknowledges that both this court as well as the TTAB have concurrent jurisdiction over the issue of cancellation. *See* Big Dipper's Motion to Stay, attached as Exh. B to Wells' Reply in Support of its Motion for Sanctions Under Rule 11, at 2 ¶5 ("The Trademark

Trial and Appeal Board has jurisdiction over the issue of cancellation, and the United States District Court also has jurisdiction over the issue of cancellation . . . . ").  Big Dipper's assertion that Wells is *required* to exhaust its administrative remedies before the TTAB prior to bringing suit in federal court is vastly undercut by its filing of the motion to stay the TTAB proceedings pending a decision in this court.  The two positions simply do not jibe.

For the reasons stated above, Big Dipper's motion to strike the counterclaim on the ground that Wells has failed to exhaust its administrative remedies is denied.

*Actual Controversy*

Big Dipper also moves for the first time in its reply brief to dismiss Counts III (declaratory judgment of non-infringement of Big Dipper's mark, IV (declaratory judgment that Big Dipper abandoned all federal and state common law rights its mark and Wells has priority), and V (declaratory judgment of no federal or state common law trademark infringement, unfair competition or false designation of origin under the Lanham Act) of the counterclaim for failure to state a cause of action because no actual controversy exists.  Specifically, Big Dipper argues that these three counterclaims merely deny the allegations of the complaint and therefore, because the claims could not exist independently of the complaint, no actual controversy as to these claims exists.  Although the court generally will not address issues raised for the first time in a reply brief, the issue of whether an actual controversy exists goes to jurisdiction, so the court must satisfy itself that jurisdiction exists before proceeding as to these claims.

However, the court finds the briefing on the issue by both sides to be insufficient.   Big Dipper fails to cite any authority whatsoever and Wells's response is relegated to a footnote in its reply to the motion for sanctions, also with no citations to authority.  The court declines to do the

parties' work for them.  Accordingly, the court directs Big Dipper to file within 7 days of the date

of entry of this order a memorandum of no more than 5 pages with citations to authority in

support of its actual controversy argument.  Wells is given seven days to respond, also in no

more than 5 pages.  Ruling will be by mail.

     B.    <u>Motion for Sanctions</u>

Wells also requests that sanctions be assessed against Big Dipper under Fed. R. Civ. P. 11

contending that Big Dipper's motion to strike is not supported by existing law.  "Rule 11(c) of

the Federal Rules of Civil Procedure allows courts to impose sanctions on a party if the

requirements of Rule 11(b) are not met." *Cuna Mut. Ins. Soc. v. Office and Professional

Employees Intern. Union*,  443 F.3d 556, 561 (7ᵗʰ Cir. 2006).  Rule 11(b)(2) requires that "the

claims, defenses, and other legal contentions [of filings] are warranted by existing law or by a

nonfrivolous argument for the extension, modification, or reversal of existing law or the

establishment of new law."  "Rule 11 provides that by presenting documents to the court, an

attorney certifies to the best of his or her knowledge that (1) they are not being presented for any

improper purpose, [and that] (2) the claims and contentions are warranted by existing law . . . . ,"

among other things. *U.S. Bank Nat. Ass'n, N.D. v. Sullivan-Moore*, 406 F.3d 465 (7ᵗʰ Cir. 2005).

Here, after being asked by Wells to reconsider filing the motion to strike based on Wells'

belief that it was baseless, Big Dipper filed the motion anyway.  Then, after reading Wells'

motion for sanctions, Big Dipper changed its theory in its reply brief and completely failed to

address any justification for its assertion that Wells was "bound" by the determination of the

PTO regarding extending registration.  Big Dipper merely states that it occasioned no delay in the

proceeding because discovery is ongoing and the case had been stayed for several months

pending a decision from another district court.

Nevertheless, whether Big Dipper's actions constitute a basis for sanctions need not be decided because Wells has failed to comply with the safe harbor provision of the rule. Specifically, Rule 11(c) creates a "safe harbor period" as follows:

> A motion for sanctions under this rule ⋯ shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.

Fed. R. Civ. P. 11(c)(1)(A). The safe harbor period begins to run "only upon service of the motion" and the purpose of this provision is to "stress the seriousness of a motion for sanctions and to define precisely the conduct claimed to violate the rule." Advisory Committee Notes, 1983 Amendment.

Wells never served a motion for sanctions on Big Dipper. Rather, when Big Dipper sent Wells' counsel a copy of the proposed motion to strike, Wells simply faxed opposing counsel a letter detailing its objection to the basis of the motion (among other issues), and asked it to reconsider filing the motion. Big Dipper filed the motion to strike six days later on June 26, 2006. Wells then filed the motion for sanctions on July 20, 2006. While Wells, in its letter, asked Big Dipper to reconsider filing the motion to strike, it contained no mention of seeking sanctions.

Moreover, it appears that Wells has combined its response to the motion to strike with its motion for sanctions, thus failing to satisfy the separate motion rule. Although Wells filed a self-contained motion entitled "Motion for Sanctions Under Rule 11," it filed no separate response to the motion to strike. Rather, Wells addressed the substantive issues raised in the motion to strike

in its motion for sanctions and subsequent reply brief. The court assumes that Wells did not want to leave the motion to strike unanswered and so the court applied the substantive arguments raised by Wells in its motion for sanctions to the motion to strike the counterclaim. Ultimately, however, this leaves Wells without having filed a separate motion for sanctions. *Northwestern Corp. v. Y.L.C. Co., Inc.*, No. 03 C 2408, 2003 WL 22317407, at *2 (N.D. Ill. Oct. 8, 2003) (denying motion for Rule 11 sanctions because request for sanctions included in response to motion to dismiss).

Because Wells has failed to comply with the safe harbor provision of Rule 11, the motion for sanctions is denied.

## III. Conclusion

Big Dipper's motion to strike the counterclaim [36-1] on the bases of res judicata and failure to exhaust is denied. Big Dipper's motion to strike the affidavit [53-1] is denied. Wells' Dairy's motion for sanctions [42-1] is denied. Big Dipper is directed to file a memorandum of no more than 5 pages in support of its motion to strike Counts III, IV, and V of the counterclaim on the ground that no actual controversy exists within 7 days of the date of entry of this order and Wells is given 7 days thereafter to file a response of no more than 5 pages. Ruling will be by mail.

**ENTER:**

*Blanche M. Manning*

**Blanche M. Manning**
**United States District Judge**

**DATE:** September 20, 2006